## GAINES v. FIRST STATE BANK OF BELLEVUE et al.

### No. 12284.

Court of Civil Appeals of Texas. Fort Worth. March 15, 1930.

Rehearing Denied April 12, 1930.

Cox & Fulton, of Wichita Falls, for plaintiff in error.

Benson & Benson, of Bowie, Taylor, Muse & Taylor, of Wichita Falls, and John W. Goodwin, of Austin, for defendants in error.

CONNER, C. J.

This suit was instituted by N. T. Gaines, receiver of the estate of John S. Campbell, deceased, against the First State Bank of Bellevue, Tex., James Shaw, banking commissioner of the state of Texas, in charge of said bank, and C. J. Parchman, liquidating agent of the bank, to establish a claim as a creditor of said bank, which was closed by the commissioner on August 19, 1927, and is now being liquidated.

The facts show that on and prior to August 19, 1927, the bank named was doing a general banking business at Bellevue, under a charter from the state of Texas, and on said date was declared insolvent by the state banking commissioner and closed, and that C. J. Parchman was placed in charge of its assets by said commissioner to liquidate the same as the law directs.

John S. Campbell died on October 30, 1925, leaving a will in which A. W. Melton and W. I. Boyd were appointed independent executors without bond. Said will was probated in Clay county on December 10, 1925, appraisers appointed and lists of claims of

the estate made and filed in the probate court. Melton resigned as executor on February 21, 1927, and was released as such, and W. I. Boyd thereafter continued, as was authorized by the will, to act as executor in full charge of the estate as a whole. During the time Boyd acted as executor, and long prior thereto, he was also the cashier in full control of the affairs of the First State Bank. After said bank was declared insolvent, N. T. Gaines, plaintiff in this suit, was duly appointed receiver of said Campbell estate by the district court of Clay county, on September 1, 1927, with full power and authority to take charge of said estate, its properties and assets, and to bring and defend suits. In due time and form the receiver filed his claim with the commissioner, as the law directs, for $37,282.26 for allowance as a debt against the First State Bank of Bellevue then in the hands of the commissioner. The commissioner refused the claim on November 23, 1927; the receiver thereupon in due time instituted this suit as stated in the beginning.

The receiver alleged that at the time the bank was closed it owed the estate as a depositor the sum of $41,915.15, less expenses for the estate not to exceed $4,263.60, and attached to his petition was a statement of the amounts alleged to have been deposited. It was further alleged that, during the time A. W. Melton was acting as joint executor with Boyd, the estate had deposited in the First National Bank of Bellevue, of which said Melton was president, the sum of approximately $21,696.54, which was applied by said Boyd as cashier of the defendant bank to its own use and benefit in settling clearance balances with the First National Bank and others. It was further alleged that approximately the sum of $22,000 had been deposited directly with the defendant First State Bank of Bellevue which belonged to said Campbell estate, and which was also used by Boyd to pay the bank's indebtedness to depositors and other creditors, all of which the First State Bank of Bellevue wrongfully and fraudulently converted to its own use and benefit, and was accordingly indebted to said estate in the sum of $37,687.55, upon which no payment whatever had been made or allowed. The plaintiff accordingly prayed for judgment that his claim be allowed as a just demand against the First State Bank, with interest from November 23, 1927, for costs of suit, etc.

The defendants answered by a general demurrer, special exceptions, and a general denial, without pleading any payment to plaintiff or any affirmative defense.

A jury was duly impaneled, and, after both parties had presented their pleadings and the plaintiff had introduced his evidence in chief and rested, the defendants also rested and presented their motion for a peremptory instruction for the jury to find for defendants. This was given and answered as instructed by the court, and judgment was entered for the defendants. To all of which the plaintiff receiver duly excepted, and has duly prosecuted this appeal.

The plaintiff in error urges that under the undisputed facts of the case he was entitled to recover a judgment establishing the claim, declared upon in favor of the devisees of the Campbell estate as general creditors of the insolvent bank. If this contention be supported by the record, as we think will later be made to appear, the error of the court in giving the peremptory instruction is fundamental and available on appeal, in the absence of formal assignments of error. We will, accordingly, pretermit a discussion of defendants in error's numerous objections to plaintiff in error's assignments and propositions upon which he bases his appeal. City of San Antonio v. Talerico, 98 Tex. 151, 81 S. W. 518; Harlan v. Acme Flooring Co. (Tex. Com. App.) 231 S. W. 348; Egan v. Farmers' Co-op. Society (Tex. Com. App.) 284 S. W. 937; Burroughs v. Smith (Tex. Civ. App.) 294 S. W. 948.

The undisputed facts show that Melton and Boyd duly qualified as executors and filed an inventory and appraisement of the estate of J. S. Campbell, consisting of land valued at approximately $34,525, stock in the Southland Life Insurance Company at $110, and notes and accounts receivable in the sum of $11,550, making the total assets $46,185. No debts were shown to be owing by the estate. A. W. Melton resigned, as stated, on February 21, 1927, and turned over all the assets of the estate to W. I. Boyd, his co-executor, who, under the terms of the will, was authorized to act alone. Boyd remained executor until after the closing of the bank, and has not been dismissed or resigned.

One of the tracts inventoried by the executors was sold to one Plaxco for $26,000; another tract was sold to J. F. Mayfield for $10,800, making a total for these two tracts $36,800. The record discloses that the receiver failed to show what disposition, if any, had been made by the bank of the stock, notes, etc. The testimony further shows without any contradiction that Plaxco paid the $26,000 for the tract of land purchased by him by three checks; one for $1,000 to the First State Bank, dated May 18, 1926, which was indorsed and credited to the said bank on May 29, 1926; another check for $19,000, dated March 19, 1927, payable to W. I. Boyd, administrator of the Campbell estate, and indorsed by Boyd as such administrator and deposited in the First National Bank of Bellevue to the credit of the executor; and yet another check for $6,000, making a total of $26,000 paid by Plaxco. All of these checks were drawn on the First National Bank of Fort Worth and paid by said bank.

George F. Simmons, assistant cashier of the defendant bank, testified without dispute that the $6,000 check given by Plaxco was indorsed by the defendant bank and cleared on June 4, 1926, the defendant bank getting credit therefor, the check showing that Boyd drew the money from the First State Bank, and then, as cashier, with said check paid $6,000 of the defendant bank's debt to the Continental Bank of Fort Worth. The $1,000 Plaxco check was used by the defendant bank for credit and payment of its debt to the Continental National Bank on May 18, 1926, and handled in a like manner as the $6,000. The $19,000 Plaxco check deposited with the First National Bank of Bellevue was used by the defendant bank for its own benefit and credit as follows, to wit: Boyd, as administrator, purchased a draft from the First National Bank of Bellevue, drawn on the First National Bank of Fort Worth, for the sum of $10,000, which was deposited by the defendant bank to its credit in the First National Bank of Bowie on March 10, 1927. The balance of the $9,000 was used by the defendant bank to pay its obligation on its clearance and debts to the First National Bank of Bellevue. The sums drawn out of the First National Bank of Bellevue were upon checks signed by Boyd as administrator. It thus appears that the assistant cashier testified positively that the defendant bank got actual credit for each of the items above set forth, making a total of $26,000. No witness disputed or contradicted this testimony, nor was any evidence offered by defendants to explain or contradict the same.

J. F. Mayfield, who purchased one of the tracts of land for $10,800, as stated, paid the sum to the Campbell estate by check, which was traced by the assistant cashier from the books as follows: It was deposited in the First National Bank of Bellevue, and used by the defendant First State Bank for credit and payment of its obligations in the same manner as set forth by paying three items of clearance credit, one for $6,000, one for $3,300, and one for $1,500, the First State Bank getting credit for the full amount of these three items, making a total of $10,-800. In addition to the items mentioned, it was shown without controversy that various other debtors of the estate deposited checks in the defendant bank, aggregating $1,931.10; it thus appearing that the total assets of the Campbell estate deposited to its credit and used by the defendant bank in the manner indicated exceeds by something over $1,900 the amount for which the defendant receiver sued. In this connection it might be further said that the plaintiff also offered a number of other checks, aggregating over $5,000, due the Campbell estate, that were excluded by the court because of their alleged variance from the allegations of the plaintiff's petition. It appears from the checks and deposit slips offered in evidence that some of the deposits were credited on the books of the bank to W. I. Boyd and some to W. I. Boyd Special; the books, however, not showing that there was any account to the credit of the Campbell estate or to W. I. Boyd, executor.

█ It affirmatively appears that no part of any of the deposits above referred to was ever paid to, or distributed among, the beneficiaries named in the will of J. S. Campbell. The relation between the executor and the beneficiaries of the estate in whose interest the plaintiff in error in this suit instituted the action was certainly one of trust.

In Stephenson v. McFaddin, 42 Tex. 322, it was said, quoting from the headnotes, that: "An executor with power to administer without control of the Probate Court is a trustee for those entitled to take under the will. * * *"

To the same effect is the case of Main v. Brown, 72 Tex. 505, 10 S. W. 571, 13 Am. St. Rep. 823; and in 11 R. C. L. page 134, § 141, it is said that: "Fidelity is always required of executors and administrators in the performance of their duties and the utmost good faith is required of them in all their transactions in regard to the estate. While administrators and executors acting in good faith are treated with indulgence, and not held answerable on slight grounds, they will not be allowed to promote their own personal interest to the injury of the heirs at law; and any fraud upon the part of an executor or administrator, which tends to defeat the ends of the trust reposed in him, will justify the court in declaring his acts void, whenever this can be done without prejudice to the rights of innocent third persons."

In Howard v. Johnson, 69 Tex. 655, loc. cit. 659, 7 S. W. 522, 524, it was said by Justice Gaines: "An executorship free from the control of the county court is a special personal trust, and carries with it the power to sell any property of the estate, subject to administration, without the order of any court, when necessary for the payment of debts, and it was probably considered that any person to whom a testator would intrust such authority could be relied upon to defend all suits for the enforcement of liens brought against the estate."

█ It was undoubtedly the duty of Boyd as independent executor of the last will and testament of the J. S. Campbell, deceased, and as such having power to dispose of the same, to have distributed the moneys coming into his hands, there being no debts, among the beneficiaries named in the will; and, the bank having without dispute received and retained the benefits of the deposits, the bank must be held to be affected with knowledge of its cashier's dereliction of duty, which, as against the heirs, must be characterized as a fraud. Having such knowledge, and having

received the benefits, the bank must be charged with the duty of restoring to the legal representatives or beneficiaries the amounts of money misapplied by its cashier.

In 5 Cyc. p. 461, it is said: "When a bank officer is acting as a president or director of another concern, or as a trustee or executor of an estate, the knowledge acquired in the latter capacity is imputed to his bank according to the most general rule."

In German Ins. Co. v. Everett, 18 Tex. Civ. App. 514, 46 S. W. 95, by the Dallas Court of Civil Appeals, it was held that one authorized by the general agents of an insurance company to solicit insurance, take and report applications to the general agents, deliver the policies, and collect the premiums, on commission, is notice to the company.

To the same effect are the cases of Southern Mut. Fire Ins. Co. v. Mazoch Bros. (Tex. Civ. App.) 291 S. W. 257; Law v. Texas State Mut. Fire Ins. Co. (Tex. Com. App.) 12 S.W. (2d) 539; First State Bank of Bonham v. Hill (Tex. Civ. App.) 141 S. W. 300; City Natl. Bank v. Morgan (Tex. Civ. App.) 258 S. W. 572; Parr v. Gardner (Tex. Civ. App.) 293 S. W. 859; Holmes v. Uvalde Bank (Tex. Civ. App.) 222 S. W. 640; Washington County Bank v. Central Bank & Trust Co. (Tex. Civ. App.) 168 S. W. 456; Citizens' Nat. Bank v. Ratcliff & Lanier (Tex. Com. App.) 253 S. W. 253; First Nat. Bank v. Kerr (Tex. Civ. App.) 225 S. W. 1106; First State Bank of Seminole v. Shannon, 159 S. W. 398, by the Amarillo Court of Civil Appeals, writ refused.

In the last-cited case it was held, quoting from the headnotes, that: "A bank deposit of money is a 'debt' owing by the bank to the depositor. When a general deposit is made, it is not contemplated that the identical money shall be returned, but the relation of 'debtor and creditor' arises on an implied contract between the parties, whether the deposit is general or specific; the only difference being that the money specially deposited cannot be used for a purpose other than that for which the bank holds it, and if such purpose fails the bank is liable to a depositor for a return of the funds."

■ The theory upon which the court gave its peremptory instruction does not appear, and we have been unable to assign any maintainable reason for the charge. In the brief of defendant in error it is urged that the appointment of the receiver was void, but the district court undoubtedly had the power to appoint a receiver, and the appointment must be upheld. No attack was made upon it in the proceedings in which the order was entered, and it cannot be vacated in this collateral proceeding upon the mere objection of the defendant in error. See 23 R. C. L. p. 33, § 30; Richardson v. McCloskey (Tex. Civ. App.) 228 S. W. 323; Id. (Tex. Civ. App.) 261 S. W. 801; Merrill v. Moore, 45 Tex. Civ. App. 450, 101 S. W. 514; Bingham v. Graham (Tex. Civ. App.) 220 S. W. 105; Roberts v. Carlisle (Tex. Civ. App.) 287 S. W. 110; Temple State Bank v. Mansfield (Tex. Civ. App.) 215 S. W. 154; 11 R. C. L. 68, § 64; Kottwitz v. Jehn (Tex. Civ. App.) 6 S.W.(2d) 209; Smith v. Smith, 11 Tex. 102; 21 C. J. 119, §§ 97 to 104; 23 C. J. 1119, § 301.

■ Nor do we think that the fact that the bank books failed to show deposits in the name of the Campbell estate or in the name of the executors, or of either of them, is material. In Hughes v. First National Bank of Waynesburg, 110 Pa. 428, 1 A. 417, it was held that a party cannot retain the fruits of his crime and repudiate the fraud of his agent, and, where bonds were deposited with an officer of a bank for safe-keeping, and afterwards pledged as collateral for, and sold in payment of, the bank's debts, without the depositor's knowledge or consent, though the officer was never authorized to receive such deposits, the bank becomes liable from the time the bonds were pledged for its debt.

■ As stated, the moneys of the estate were undoubtedly received and deposited in the banks stated, and we conclude, in view of the evidence, that the receiver was entitled to a judgment as the legal representative of the devisees in the last will and testament of J. S. Campbell, deceased, for $37,-282.26, together with interest thereon at the legal rate from November 23, 1927, thus fixing his status as a general creditor of the insolvent bank, entitled to participate as such with the other general creditors of the bank in the liquidation and settlement of the bank's affairs by the bank examiner and liquidating agent. Accordingly, the judgment of the trial court is reversed, and judgment here rendered for the appellant receiver, as indicated in the conclusion just stated, no ruling being made by us on the assignments of error to the action of the court in excluding deposit slips of over $5,000 on the ground of variance as stated in our opinion, for the reason that appellant, on the submission of this case, waived those assignments, in event we should conclude that the judgment below should be reversed and here rendered for appellant, as we have done.