**Audie O. BOONE, Appellant,**

v.

**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellee.**

No. 12–88–00207–CV.

Court of Appeals of Texas, Tyler.

Feb. 28, 1990.

---

Bill Rosenstein, Tyler, for appellant.

Mike Hatchell, Tyler, for appellee.

COLLEY, Justice.

This is a workers' compensation case in which plaintiff/appellant Audie O. Boone (hereinafter "Boone") recovered a judgment on a jury verdict against defendant/appellee Texas Employers' Insurance Association (hereinafter "TEIA") for compensation benefits for total temporary incapacity.

Boone presents four points of error. By his first point of error he claims that the trial court abused its discretion in granting TEIA's pretrial motion to withdraw three deemed admissions of fact that Boone's on-the-job injury was the producing cause of total and permanent incapacity, and that no pre-existing physical condition or injury was "the sole producing cause of [Boone's present] incapacity." The principal issue presented is whether TEIA made a showing sufficient to satisfy the "good cause" requirement of Tex.R.Civ.P. 169.[1]

The record shows that Boone filed suit on October 6, 1986; that TEIA filed its original answer on October 17, 1986; and that TEIA filed its "First Amended Answer" on January 11, 1988. TEIA's last

---

1. All references to rules in this opinion are to the Texas Rules of Civil Procedure unless otherwise noted.

pleading was verified, and alleged, in part, (1) that Boone's incapacity was not total and permanent but partial and temporary, and (2) that the incapacity was produced "in whole or in part" by previous or subsequent injuries, diseases, "congenital defects," or a combination of said causes.

On January 20, 1988, TEIA's trial counsel, Alan E. Brown (Brown) was served with numerous requests [2] for admissions of facts, including the following:

### REQUEST FOR ADMISSION NO. 15:

Do you admit that the injury of May 6, 1985, was a producing cause of any total incapacity?

### REQUEST FOR ADMISSION NO. 16:

Do you admit that any total incapacity sustained by [Boone] as a result of the injury of May 6, 1985, is permanent?

### REQUEST FOR ADMISSION NO. 17:

Do you admit that no pre-existing physical condition or injury is the sole producing cause of any incapacity that [Boone] may now suffer from?

TEIA failed to file a timely answer to any request within the time frame of Rule 169.

On Wednesday, February 24, 1988, Boone filed a motion for summary judgment predicated solely on the deemed admissions. On Friday, February 26, 1988, TEIA's counsel filed a motion to *amend* its responses to Boone's request for admissions. By that pleading, TEIA moved the court to withdraw deemed admissions numbers 12, 13, 15, 16 and 17, but admitted the truth of all other requests propounded by Boone. An evidentiary hearing was conducted by the court on April 21, 1988. At the conclusion of that hearing, the court reserved its rulings on the motions presented. When the case was called for trial on May 16, 1988, the court overruled Boone's motion for summary judgment and granted TEIA's motion to withdraw deemed admissions numbers 15, 16 and 17 only.

Brown testified at the April 21 hearing. He admitted that "[t]he [requests] remained in my office, and approximately within a week from the date that they [were] due I discovered them, found that we had missed the 30 day time limit and immediately filed our ... motion [to withdraw the admissions]." In response to a question by the court, Brown stated that Central's offices in Tyler were closed before he received the case file from TEIA. He then stated that he had written a letter to Central at its Wichita Falls address "as early as November 10th [1986] ... shortly after we received the case." Brown's uncontradicted testimony is that he never received a response from Central to any of his correspondence.

Brown's April 21, 1988, testimony shows that he took Boone's treating physician's (Dr. Charles T. McCarthy) deposition before the month of December 1987.[3] Presumably, based on that occurrence, Brown in all candor testified:

> Certainly there was some element of oversight in that the issues on capacity and total and permanent, those things, obviously should have been denied, but because of the particular problems of trying to obtain information on other portions, to answer other portions of the [request] ... would qualify as good cause to allow a late filing.

In addition, Brown in his testimony refers to Dr. McCarthy's deposition testimony and paraphrases portions thereof regarding the effects of the injuries upon which Boone's suit is based. According to Brown, Dr. McCarthy said that Boone "wouldn't have been ... able to work whether he had ever had this injury or not." Brown characterizes Dr. McCarthy's testimony as ample to support a jury finding that Boone's present incapacity was produced solely "by some underlying [pre-existing] condition...." In summary, Brown tells the trial court

---

2. Admission of all requests would prove Boone's entire cause, entitling him to a summary judgment for total and permanent incapacity under the workers' compensation act.

3. The trial record reveals that the deposition of Dr. Charles T. McCarthy, Boone's treating physician, was taken on April 14, 1987, and that Brown represented TEIA at the deposition.

that under McCarthy's testimony, Boone's case is "not a lay down or a clear T & P by any stretch of the imagination."

Paragraph 1 of Rule 169 (Requests for Admission) provides a time frame for the making, serving and filing of requests for admissions. It also provides specifically, in pertinent part, as follows:

Each matter of which an admission is requested shall be separately set forth. The matter is admitted without necessity of a court order unless, within thirty (30) days after service of the request, or within such time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by his attorney.... The answer shall specifically deny the matter or set forth in detail the reasons that the answering party cannot truthfully admit or deny the matter. A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify his answer or deny only a part of the matter of which an admission is requested, he shall specify so much of it as is true and qualify or deny the remainder. *An answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless he states that he has made reasonable inquiry and that the information known or easily obtainable by him is insufficient to enable him to admit or deny.* A party who considers that a matter of which an admission is requested presents a genuine issue for trial may not, on that ground alone, object to the request; he may, subject to the provisions of paragraph 3 of Rule 215, deny the matter or set forth reasons why he cannot admit or deny ... [the matter]. (Emphasis ours.)

Paragraph 2 of Rule 169 provides, in pertinent part, as follows:

Any matter admitted under this rule is conclusively established as to the party making the admission unless the court on motion permits withdrawal ... of the admission. Subject to the provisions of Rule 166 governing amendment of a pretrial order, and Rule 166b–6 governing duty to supplement discovery responses, the court may permit withdrawal ... of ... deemed admissions upon a showing of good cause for such withdrawal ... if the court [further] finds that the parties relying upon the ... deemed admissions will not be unduly prejudiced and that the presentation of the merits of the action will be subserved thereby.

The record before us makes it clear that TEIA did not *intentionally* abuse or resist the discovery process or consciously disregard its obligation to timely file its answers to the requests. It is plain that Boone's requested admissions 15, 16 and 17 presented "genuine [issues of fact] for trial." However, Rule 169 expressly provides in Paragraph 1 that

An answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless he states that he has made reasonable inquiry and that the information known or easily obtainable by him is insufficient to enable him to admit or deny. A party who considers that a matter of which an admission is requested presents a genuine issue for trial may not, on that ground alone, object to the request; he may ... deny the matter or set forth reasons why he cannot admit or deny it.

Defense counsel failed to avail himself of this clear remedy respecting Boone's requests numbers 15, 16 and 17; however, paragraph 2 of Rule 169 provides that "the court may permit withdrawal ... of ... deemed admissions upon a showing of good cause for such withdrawal ... if the court finds that the parties relying upon the ... deemed admissions will not be unduly prejudiced and that the presentation of the merits of the action will be subserved thereby."

TEIA argues in this Court that the correct standard for determination of good cause under Rule 169 "is that ... [standard argued by Brown] ... at the April 21, 1988,

hearing."[4] But, TEIA then seems to limit its appellate argument to a reference to the broad discretion of the trial judge to permit withdrawals, which discretion should not be overturned unless it is exercised in an arbitrary manner or "[ignores] a legal or equitable ground for allowing amendment of deemed admissions." In support of these arguments TEIA refers us to *Bynum v. Shatto*, 514 S.W.2d 808 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.), and to the supreme court case relied on by the *Bynum* court, *Sanders v. Harder*, 148 Tex. 593, 227 S.W.2d 206, 208 (1950).

In *Sanders v. Harder*, Harder filed a motion to revive a dormant default judgment he had recovered in June 1941. The jury's verdict (answers to two special issues) was favorable to Sanders. Harder filed a motion for judgment non obstante veredicto premised on two grounds. Harder claimed by his first ground that Sanders' failure to deliver to him or his attorney "a sworn statement denying any of the matters inquired about in the request or setting forth why they could not either admit or deny the same; wherefore, it was urged they had made judicial admissions binding upon them, and the court should not have admitted any evidence contradicting the facts admitted." 227 S.W.2d at 208. The trial court overruled that ground, but sustained Harder's second ground (immaterial here) and rendered judgment for Harder. The Texarkana Court of Civil Appeals affirmed the judgment (223 S.W.2d 61). The Supreme Court held that the trial court did not err in overruling the first ground set forth in Harder's motion for judgment non obstante veredicto, but concluded the trial court did err in sustaining the second

ground supporting Harder's motion for judgment non obstante veredicto and reversed both courts below and remanded the case to trial for reasons not pertinent here. The *Sanders* court, in review of Sanders' petition, quoted the text[5] of Rule 169.

After quoting the rule, the court declared:

> The primary purpose of the rule is to simplify trials by eliminating matters about which there is no *real controversy*, but which may be difficult or expensive to prove. It was never intended to be used as a demand upon a plaintiff or defendant to admit that he had no cause of action or ground of defense. When the language of the rule is considered in the light of its purpose, there is no doubt that *some* discretion is lodged in the trial court in its enforcement. (Emphasis ours).

The Supreme Court noted that the "only particular in which petitioners failed to comply literally with the rule is that they filed their reply with the District Clerk instead of [with] the respondent." The court observed that under "the express language of the rule" had petitioners requested "additional time ... to file [their reply], ... the court [in its discretion] could have extended the time [to file]." In any event the court went on to hold upon its total review of the circumstances and facts presented, that Sanders' reply filed with the clerk of the court within the time fixed by the rule was "a substantial compliance" with Rule 169. Hence the court concluded no error was presented. *Id.* 227 S.W.2d at 209.

---

**4.** Possibly a reference to Brown's testimony; perhaps his argument that some good cause existed for TEIA's failure to answer, that is to say, the inability of counsel to locate the former employer of Boone to get information to answer some of the questions embodied in the request.

**5.** As follows: "At any time after the defendant has made appearance in the cause, or time therefor has elapsed, a party may deliver or cause to be delivered to any other party or his attorney of record a written request for the admission by such party ... of the truth of any relevant matters of fact set forth by the re-

quest.... Each of the matters of which an admission is requested shall be deemed admitted unless, within a period designated in the request, not less than 10 days after delivery thereof or within such further time as the court may allow on motion and notice, the party to whom the request is directed delivers or causes to be delivered to the party requesting the admission or his attorney of record a sworn statement either denying specifically the matters of which an admission is requested or setting forth in detail the reasons why he cannot truthfully either admit or deny those matters."

The *Bynum* court, in construing the 1973 version of Rule 169, cited and relied on *Sanders* in ruling that the trial court did not abuse its discretion in overruling Bynum's motion to strike Shatto's four-day late answer to Bynum's request for admission of fact and to deem the facts requested to be admitted. The *Bynum* court, in addressing Bynum's points of error, noted that the trial court has discretion to grant an extension of time to file answers to requests "even after the time for answering has expired." *Bynum*, 514 S.W.2d at 810. The *Bynum* court also relied on general standards found in *Gordon v. Williams*, 164 S.W.2d 867 (Tex.Civ.App.—Beaumont 1942, no writ), and quoted therefrom:

> Rule No. 169 will perform a most useful office in our jurisprudence, provided it is wisely administered. It should not be so construed as to give one litigant an advantage over his opponent, permitting him to have judgment without supporting testimony when, without injustice to either party, the case can be opened for a full hearing on the evidence.

*Bynum*, 514 S.W.2d at 811 (citation omitted).

The history of Rule 169 reveals that the entire rule was substantially rewritten in 1984 and that on July 15, 1987, the second sentence of Paragraph 2 of Rule 169 was amended effective January 1, 1988, to read: "Subject to the provisions of Rule 166 governing amendment of a pre-trial order *and Rule 166b–6 governing duty to supplement discovery responses*, the court may permit withdrawal or amendment *of responses and deemed admissions upon a showing of good cause for such withdrawal or amendment if the court finds that the parties relying upon the responses and deemed admissions will not be unduly prejudiced and that the presentation of the merits of the action will be subserved thereby.*[6]

These amendments to Paragraph 2 of the rule eliminated the former language of the rule, which read, "when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits."

■ The changes effected by the 1987 amendment to Paragraph 2 of Rule 169 are significant. Under that language the trial judge may only permit withdrawal of deemed admissions when the party seeking the same presents sufficient evidence to establish good cause for his failure to make timely answers to the requested admissions, and then only if the court further finds that the withdrawals can be ordered without causing undue prejudice to the party relying on the admissions, and that the presentation of the merits of the action will be subserved by the withdrawal.

In the case before us, there is no question under the evidence that the second and third requirements of Rule 169 are well met. However, Brown's uncontradicted testimony also establishes that he was armed with sufficient information by the deposition testimony of Dr. McCarthy to enable him, in good faith, to forthwith deny the requested admissions embodied in Boone's request for admissions numbers 15, 16 and 17. The *entire* record discloses that Brown had the information for a period of eight to nine months prior to January 21, 1988. The record of the April 21, 1988, hearing establishes that Brown had the medical information at least as early as November, 1987, some two months before he received the requests.

As we construe Rule 169, the "good cause" requirement is a threshold issue which must be determined before the trial judge can even consider the remaining requirements set forth in the rule. The record clearly demonstrates that while TEIA's counsel did not intentionally refuse to comply with the discovery process, he did inadvertently fail to file timely answers to the requested admissions. Hence, to decide this point of error, we must determine whether a showing of mere oversight or inattentiveness constitutes a "showing

---

6. Language added by the 1988 amendment is italicized.

of good cause" under the rule sufficient to excuse TEIA's failure to file its answers within the time prescribed by the rule. TEIA so contends and bases its arguments on *Bynum* and *Sanders*. These arguments are not altogether persuasive since both decisions pre-date the 1987 amendment to Paragraph 2 of the rule. TEIA's reliance on *Gordon v. Williams* is, for the same reason, misplaced. The radical changes effected by the 1987 amendment provide that a party seeking to avoid the consequences of his failure to timely file answers has the initial burden to produce evidence that shows good cause for that failure before the trial court may order the withdrawal of the deemed admissions. In addition, the amendment shifts the burden of proof on *all three requirements* to the party seeking withdrawal.

■ Neither party to this appeal has cited to a supreme court decision defining good cause under Rule 169, and our research reveals none. But TEIA has furnished us a copy of the opinion in *Employers Insurance of Wausau v. Halton*, No. 05–89–0065–CV (Tex.App.—Dallas, October 19, 1989).*

The *Halton* court, in reaching its decision finding good cause, relied to some extent on *Sanders, Bynum* and *Gordon*, as well as other authorities pre-dating the 1987 amendment. The court also relied on case law involving the good cause issue in respect to Rule 320,[7] and the mandate for liberal construction articulated in Rule 1.

There is a clear analogy between a motion to set aside a default judgment, occasioned by a failure to file a timely answer, and a motion to set aside admissions of fact occasioned by a party's failure to timely file proper responses. The three requirements of Rule 169 mirror the requirements of *Craddock*. The only logical distinction is that one is found in a discovery rule, and the other is articulated in case law. Under *Craddock*,[8] the essence of good cause in

respect to Rule 320 is a showing that the defaulting party did not intentionally or consciously disregard his obligation to timely file an answer to the suit. Certainly a party acting through his attorney of record who does not act intentionally or with conscious disregard of his obligation to timely file answers to requests under Rule 169 is entitled to the same construction of good cause under Rule 169 as under Rule 320, for his failure to timely file the answer to the suit. Surely, requests for admissions are no more sacrosanct than a default judgment. We agree with our Dallas brethren that "good cause" under Rule 169 has the same meaning as "good cause" under Rule 320.

■ Based on the record and our construction of Rule 169, we conclude that the trial judge did not abuse his discretion in withdrawing the three deemed admissions. Boone's first point of error is overruled.

■ Our disposition of the first point of error renders moot Boone's second and third points by which he complains of the overruling of his motion for summary judgment based on the deemed admissions, and contends that the deemed admissions "established [his] right to judgment [non obstante veredicto] for total and permanent ... benefits." Additionally, we note that the rule in *Tobin v. Garcia*, 159 Tex. 58, 316 S.W.2d 396 (1958) (allowing appellate review of a trial court's action overruling a motion for summary judgment in cases where both parties move for a summary judgment and one is granted), is inapplicable to a case wherein but one party filed a motion for summary judgment and a conventional trial follows. *Ackermann v. Vordenbaum*, 403 S.W.2d 362, 364–366 (Tex.1966). For these reasons we overrule Boone's second and third points of error.

We now address Boone's last point of error, treating it, as we must, as contend-

---

\* Editor's Note: The opinion of October 19, 1989 was superseded by an opinion of February 27, 1990, 792 S.W.2d 462.

**7.** As applied to motions for new trial following entry of a default judgment. *See,* e.g., *Craddock*

*v. Sunshine Bus Lines,* 134 Tex. 388, 133 S.W.2d 124, 126 (1939).

**8.** Reaffirmed in *Strackbein v. Prewitt,* 671 S.W.2d 37, 38 (Tex.1984).

ing not only that the evidence at trial conclusively establishes his right to a finding of total and permanent incapacity, but also that there is no evidence to support the jury's finding in response to Special Issue No. 1B.[9] In deciding this point we consider only the evidence and reasonable inferences arising therefrom which tend to support the finding and disregard all evidence and inferences contrary thereto. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex.L.Rev. 361 (1960).

Portions of the deposition testimony of Dr. McCarthy were introduced at trial by Boone and TEIA. On direct examination, Dr. McCarthy testified that Boone, a 65–year–old male, was suffering from a degenerative disease in his lower back at the time he sustained the injury, which was aggravated by the strain injury Boone suffered while on the job with Central. McCarthy, when asked on direct examination, "All right. In other words, would that [on-the-job] injury be a cause of the disability that he suffers today, in your opinion?" In reply, Dr. McCarthy said, "Well, I think in all probability sufficient time has elapsed for him to have, in effect, recovered from the strain injury, but I think he remains symptomatic because of the pre-existing degenerative disease in his back." No other expert medical testimony was adduced at trial. The weight to be given McCarthy's testimony or any portion thereof was for the trial jury to assess. We conclude that the testimony above quoted, standing alone, constitutes some evidence that supports the jury's determination of the duration of the total incapacity produced by Boone's on-the-job injury. Therefore, we overrule Boone's fourth point of error.

The judgment is affirmed.

---

**9.** Special Issue 1B and its answer read as follows:

1B. Find the duration of total incapacity. (By answering "Permanent" or by stating the ending date) [ANSWER:] 1B. 12/31/87