**Robert Earl TINNEY, Independent Executor of the Estate of Charles W. Tinney, Deceased, Appellant,**

v.

**TEAM BANK, Independent Administrator of the Estate of J.I. Harvey, Deceased, Appellee.**

No. 2–90–103–CV.

Court of Appeals of Texas, Fort Worth.

July 23, 1991.

Opinion on Motion for Rehearing Nov. 20, 1991.

Rehearing Denied Dec. 18, 1991.

Jack Gay, Dallas, for appellant.

Gerald A. Bates, Sharpe, Bates, McGee & Spurlock, P.C., Fort Worth, for appellee.

Before WEAVER, C.J., and HILL and MEYERS, JJ.

## OPINION

HILL, Justice.

Robert Earl Tinney, Independent Executor of the Estate of Charles W. Tinney, deceased, appeals from a take-nothing judgment in favor of Team Bank, formerly known as Texas American Bank/Fort Worth, N.A. and Texas American Bridge Bank/Fort Worth, N.A., Independent Administrator of the Estate of J.I. Harvey, deceased. Robert Tinney brought suit on a note executed by Harvey in favor of Charles W. Tinney. Following a bench trial, the court entered a take-nothing judgment in favor of Team Bank, and filed findings of fact and conclusions of law. In seven points of error, Tinney contends that the trial court erred or abused its discretion by: (1) considering certain requests for admissions to be deemed admitted; (2) failing to allow Tinney additional time to answer the requests or withdraw the deemed admissions and either amend or answer them; (3) prohibiting Tinney from testifying that the Harvey obligation had not been paid; (4) granting Team Bank's motion for judgment and entering judgment against Tinney because there is no evidence or insufficient evidence to support the judgment and the relevant findings of fact and conclusions of law; (5) failing to grant Tinney's motion for judgment; (6) concluding that the contract of purchase of property in which the estate had no interest was sufficient consideration to support the release from the estate; and (7) dismissing the intervenors.

We reverse and render judgment for Robert Tinney as independent executor of the Charles Tinney estate because we hold that the undisputed evidence establishes as a matter of law that there was no consideration received by the Tinney estate in exchange for the release of lien executed by Tinney in his capacity as independent executor as partial consideration for Harvey's agreement to purchase a truck stop from Tinney and other individuals, and that Harvey had knowledge of such facts that would as a matter of law charge him with notice that the transaction constituted a breach of Tinney's fiduciary duty to the Tinney estate. We remand the issue of Tinney's attorney's fees.

Tinney urges in points of error numbers one and two that the trial court erred or abused its discretion by considering the requests for admissions to be deemed admitted and by failing to allow Tinney additional time to answer the requests or withdraw the deemed admissions and either amend or answer them.

Suit was brought on a promissory note executed on April 14, 1983, by J.I. Harvey, now deceased, in favor of Charles W. Tinney, also now deceased. The note was secured by a vendor's lien deed of trust. Since Charles Tinney died after the execution of the note, Robert Tinney brought suit in his capacity as independent executor of Charles' estate. When Harvey died after this suit was brought, Texas American Bank/Fort Worth, N.A., independent administrator of Harvey's estate, was substituted as defendant. The bank is now named Team Bank.

Prior to trial, Team Bank submitted certain requests for admissions to Tinney. Among these admissions was an admission that Tinney, as executor of the estate, had executed a release of the lien on the note, in which he acknowledged payment in full on the note, as partial consideration for Harvey's purchase of a truck stop from T.J. Tinney, Jr., Retta Tinney, Wanda Tinney, and Robert Tinney. The paperwork in connection with the sale of the truck stop made no reference to the Tinney estate.

Tinney never responded to the requests for admissions. Consequently, Tinney was not allowed to testify at trial that the note was unpaid. The trial judge declared that his understanding was that the admissions were deemed admitted and that he could not extend the time to answer them. The trial court relied on the admissions in his findings of fact and conclusions of law, finding that the execution by Harvey of the contract for the purchase of the truck stop was sufficient consideration to discharge the note.

Rule 169(1) of the Texas Rules of Civil Procedure provides that when there is no

timely response to a request for admissions the matter is admitted without the necessity of a court order. Rule 169(2) of the Rules of Civil Procedure states that "the court may permit withdrawal or amendment of responses and deemed admissions upon a showing of good cause for such withdrawal or amendment if the court finds that the parties relying upon the responses and deemed admissions will not be unduly prejudiced and that the presentation of the merits of the action will be subserved thereby." *Id.*

Tinney had the burden to present evidence to the court to establish good cause for his failure to make timely answers to the requests for admission, that withdrawals of the admissions could be ordered without undue prejudice to Team Bank, and that the presentation of the merits would be subserved by the withdrawal. *Boone v. Texas Employers' Insurance Association,* 790 S.W.2d 683, 688 (Tex.App.—Tyler 1990, no writ).

The only evidence presented by Tinney as to the admissions consisted of the statement of counsel that, "... I have that, and I just somehow failed to put it in my file and failed to get the answers." The attorney did not testify and made no statements as to the subject of prejudice to Team Bank or as to whether the presentation of the merits would be subserved by the withdrawal.

The requirement of good cause in Rule 169 is the same as that in the case of default judgments under Rule 320 and may be established by a showing that the failure to file was not intentional or in conscious disregard of the party's obligation to timely file an answer. *Id.* at 689.

Tinney argues that the statement of facts reflects that he did not receive the request for admissions until October 31, 1989, only ten days before trial. A revised statement of facts shows that the requests were received by Tinney on October 13, 1989, and that the trial actually began on November 20, 1989, more than thirty-three days from the date he received them.

Tinney also insists that he met his burden by proving good cause and that his statement that he would answer "today during this case" shows that no undue prej-

udice to the Bank would have resulted. Even if counsel's statements did constitute the presentation of evidence we hold that it was insufficient to meet Tinney's burden as to the second two elements that Tinney was required to prove, that Team Bank would not be prejudiced and that the merits would be subserved, so that the trial court did not abuse its discretion in refusing to allow Tinney's request for additional time to answer the requests and in considering the requests deemed admitted. We overrule points of error numbers one and two.

■ Tinney contends in point of error number three that the trial court erred in prohibiting him from testifying that the estate's obligation on the note had not been paid. In points of error numbers four, five, and six, Tinney urges that the trial court erred in granting the Bank's motion for judgment rather than his because there is no evidence, or insufficient evidence, to support the judgment and the findings of fact and conclusions of law, and in concluding that the contract of purchase of property in which the estate had no interest was sufficient consideration to support the release from the estate.

Tinney testified in a bill of exceptions at trial that no payments had ever been made on the note. The Bank asserts that the Harvey estate owes nothing on the note because Tinney released the lien on the note as partial consideration for Harvey's agreement to purchase a truck stop from Tinney and other individuals. There is no indication in the record that the purchase was made from Tinney in any capacity other than his personal capacity. The trial court found that Harvey's execution of the contract to purchase the truck stop in return for the execution and delivery of a release of the note was sufficient consideration to discharge the note. We hold that the undisputed evidence shows that the Tinney estate received no consideration for the discharge of the note. Because the undisputed testimony shows that no payments have been made on the note and that the estate has received no other consideration in return for the release of lien, the trial court erred in its holdings that Tinney

failed to prove that the note was unpaid and that the execution by Harvey of the contract to purchase the truck stop was sufficient consideration to discharge the note. Because the request for admission number thirteen, respecting the release of the note being part of the consideration for Harvey's purchase of the truck stop, did not relate to consideration to the estate, as opposed to consideration to Tinney individually, we also hold that the trial court erred by not permitting Tinney to testify that the note had not been paid.

■ The Bank argues that the trial court did not err in granting its judgment because Tinney failed to prove that the estate was the present owner and holder of the note since he introduced only a copy of the note in evidence and did not show he was in possession of the original note. Tinney testified that he was in possession of the original note, the original having been found among the effects of Charles Tinney subsequent to his death. A court bailiff testified that Tinney's counsel gave him the original note, and that at the counsel's request he placed the note in the file and laid it on the judge's desk. Counsel also testified that he gave the bailiff the original note to be put in the file, and that the note had not been endorsed either on the front or on the back. The court found that Tinney, in his capacity as executor of the estate, was the holder and owner of the note. We hold that the evidence as we have outlined it supports the trial court's finding.

The Bank also urges in answer to these points of error that the trial court did not err in considering the admissions as admitted, including the admissions relating to the purchase of the truck stop. As we have previously noted, we agree with the Bank as to that point, but find that evidence of consideration given to Tinney personally does not amount to evidence showing satisfaction of the obligation owed to the Tinney estate.

Finally, the Bank argues that the estate and its heirs are bound by Tinney's action in giving a release, unless the estate and its heirs show that Harvey knowingly participated in Tinney's fraud or breach of his

fiduciary duty. It relies on the cases of *Kinzbach Tool Co., Inc. v. Corbett–Wallace Corp.,* 138 Tex. 565, 160 S.W.2d 509, 514 (1942); *Gaines v. First State Bank,* 28 S.W.2d 297 (Tex.Civ.App.—Fort Worth 1930), *aff'd,* 121 Tex. 559, 50 S.W.2d 774 (1932); and *Nathan v. Hudson,* 376 S.W.2d 856 (Tex.Civ.App.—Dallas 1964, writ ref'd n.r.e.).

*Kinzbach Tool Co.* and *Gaines* both appear to hold that one who knowingly benefits from the action of a fiduciary in derogation of the fiduciary's responsibility shares liability with the fiduciary to those to whom the fiduciary owed his duty. *Kinzbach Tool Co.,* 160 S.W.2d at 514; *Gaines,* 28 S.W.2d at 299–300. *Nathan* involved the purchase by a Mr. Hudson of stock in one corporation from two sources: from an estate and from one of the executors of the estate in the executor's individual capacity. The executor, in his individual capacity, received a better deal on his stock than the estate did. The trial court found that Hudson was innocent of any breach of trust and was not negligent in entering into the agreement, acting as an ordinarily prudent businessman would have acted under the same circumstances. The court of appeals notes that it was important to the estate that the sale be made because it needed the money for estate taxes due and if the tax was not paid the estate would have been subject to foreclosure of the government lien on all of its assets. *Nathan,* 376 S.W.2d at 862–63. The court also noted that the executors had no authority to grant Hudson a voting proxy as the executor/trustee had done. *Id.* In the case at bar there is no evidence that the estate benefited in any way from the sale of the truck stop.

The undisputed facts in our case show that Harvey knew that he was dealing with Tinney as executor, in arranging a business deal that by its terms benefited Tinney individually to the detriment of the estate. We find these facts very similar to those of *Kinzbach Tool Co.* in which one business dealt with the employee of another company to the benefit of the employee and to the detriment of his employer, to which the employee owed a fiduciary duty. In that

case the court held that the other company shared responsibility along with the employee with respect to any detriment suffered by the employer due to its employee's breach of fiduciary duty. *Kinzbach Tool Co.*, 160 S.W.2d at 514.

The Bank argues that Tinney did not meet his burden of showing that Harvey knew that the transaction constituted a breach of Tinney's fiduciary duty. From the admissions that were deemed admitted, we know that the net proceeds from the sale of the truck stop were to go to a trustee and escrow agent in behalf of United Savings Association of Texas and of the United States Small Business Administration. Additionally, the admissions reflect that the contract for the sale of the truck stop had to be approved by the United States Bankruptcy Court. The undisputed evidence, therefore, establishes that Harvey was making an agreement with Tinney to release, in his capacity as executor of the Tinney estate, the indebtedness on Harvey's note to the estate, as partial consideration for Harvey's purchase of the truck stop from Tinney as an individual, along with others. The same evidence also reflects that under the terms of the contract of sale of the truck stop none of the proceeds were to go to the estate. The undisputed evidence, therefore, shows that the release was without consideration flowing to the estate. We hold that under these undisputed facts Harvey was at the very least charged with knowledge that he and Tinney were benefited to the detriment of the estate. We sustain points of error numbers three, four, five, and six.

Tinney contends in point of error number seven that the trial court erred by dismissing a claim in intervention brought by a contingent beneficiary of the Tinney estate, claiming fraud and breach of fiduciary duty. In view of our determination of points of error numbers three, four, five, and six, we need not determine Tinney's point of error number seven.

We hold that Tinney is entitled to recover the principal amount of the real estate lien note, $50,000, plus pre-judgment interest as specified by the terms of the note. The note provides that the principal amount of $50,000 shall be due and payable in 10 annual installments of $5,000 each, payable on April 14th of each calendar year, beginning April 14, 1984, and continuing regularly and annually thereafter until said principal sum has been duly paid. Interest at the rate of 9% per annum is computed on the unpaid principal balance, from the date of funding, April 14, 1983, and is due and payable annually as it accrues, on the same dates as, but in addition to, the installments of principal. The annual interest rate on matured, unpaid amounts is 10%.

Appellee did not make the installment payments due on 4/14/84, 4/14/85, and 4/14/86. Tinney filed this suit on 4/13/87 requesting "maturity of all sums due by the terms of [the note] and makes demand for the total sums due of principal and interest."

Applying the terms of the contract, we hold that Tinney is entitled to recover pre-judgment interest as follows:

| | | | | | |
|---|---|---|---|---|---|
| 9% | On $50,000 for the period | 4/14/83–4/14/84 | = | $ 4,500. |
| 9% | On $45,000 for the period | 4/15/84–4/14/85 | = | 4,050. |
| 10% | On $ 5,000 for the period | 4/15/84–4/14/85 | = | 500. |
| 9% | On $40,000 for the period | 4/15/85–4/14/86 | = | 3,600. |
| 10% | On $10,000 for the period | 4/15/85–4/14/86 | = | 1,000. |
| 9% | On $35,000 for the period | 4/15/86–4/13/87 | = | 3,150. |
| 10% | On $15,000 for the period | 4/15/86–4/13/87 | = | 1,500. |
| 10% | On $50,000 for the period | 4/13/87–1/19/90 | = | 13,178.08 |

10% On $50,000 for the period 4/13/87–1/19/90 = 13,178.08
(the date of the trial court's judgment; 962 days × $13.69863/day)

TOTAL PRE-JUDGMENT INTEREST . . . . . . . . . . $31,478.08

We reverse and render judgment that Robert Earl Tinney, Independent Executor of the Estate of Charles W. Tinney, deceased, recover from Team Bank, Independent Administrator of the Estate of J.I. Harvey, deceased, the amount of $81,-478.08, plus applicable post-judgment interest from 1/19/90 until the judgment is satisfied.

We remand the issue of Tinney's attorney's fees to the trial court for its determination as to a reasonable attorney's fee.

## OPINION ON MOTION FOR REHEARING

In its motion for rehearing the appellee, Team Bank, f/k/a Texas American Bank/Fort Worth, N.A., Independent Administrator of the Estate of J.I. Harvey, Deceased, urges that we erred in rendering this cause rather than remanding it to the trial court because the evidence was not fully developed. Because we agree that justice would be better served by the remand of this cause since the evidence was not fully developed at trial, we hereby grant that portion of Team Bank's motion for rehearing that urges that this cause be remanded rather than rendered, withdraw our prior judgment and issue our judgment that the judgment below be reversed and this cause remanded for a new trial. *See Southwestern Drug Corp. v. McKesson & Robbins*, 141 Tex. 284, 172 S.W.2d 485, 487 (1943). We overrule all other points raised by Team Bank's motion for rehearing.