## COMMERCIAL STANDARD INS. CO. v. McKISSACK et al.

### No. 14260.

Court of Civil Appeals of Texas. Fort Worth.

July 11, 1941.

Rehearing Denied Sept. 19, 1941.

Buck & Knapp, of Fort Worth, for appellant.

Bryan, Stone, Wade & Agerton and G. W. Parker, Jr., all of Fort Worth, for appellee.

SPEER, Justice.

Prior to the date of an accident out of which this suit grew, Paul A. Cook was a Special Commodity Carrier in a certain prescribed territory, operating under a permit from the Railroad Commission of Texas. Cook's application for a permit was filed on April 12, 1937, and in compliance with law applicable, listed three Ford Trucks, describing them for identification. On May 6, 1937, he procured and filed a policy of insurance from Commercial Standard Insurance Company covering property and public liability damages. Thereafter, on May 17, 1937, the Railroad Commission issued the Special Commodity Carrier permit, under the provisions of Article 911b et seq., R.C.S., and amendments thereto, Vernon's Ann.Civ.St. art. 911b et seq.

At the time involved here, one of Cook's Ford trucks was out of repair and was not being used by him in his business, but in its stead he was using an International truck. L. S. Walker, an agent of Cook, was driving the International truck on the highway en route to haul a commodity authorized by the permit and on the evening of October 29, 1937, the motor got out of repair and it was left on or near the highway without flares or other signals to warn the public of its presence.

H. T. McKissack, while driving along the highway, without warning or knowledge of the presence of the truck, collided with it, resulting in personal injuries to himself and demolishing his car. Hardware Mutual Casualty Company carried property damage insurance on McKissack's car and compensation insurance for McKissack's employer. Hardware Mutual Casualty Company paid for the damages to the car and settled the compensation insurance, taking a subrogation agreement, to the extent of payments made by it, to the rights of McKissack.

Thereafter, McKissack, for himself and for the use and benefit of Hardware Mutual Casualty Company, sued Cook and Walker (driver) for damages sustained in the collision. Judgment was recovered for an amount greater than that involved in this appeal. That judgment became final.

On July 11, 1939, McKissack, for himself and for the benefit of Hardware Mutual Casualty Company, instituted this suit against Commercial Standard Insurance Company on its policy of public liability and property damage insurance, issued to Cook. The defendant insurance company defended upon the ground that its policy did not cover damages sustained by a collision with the International truck, because of the provisions in its policy contract, which provisions we shall later note. The case was tried to the court without a jury. Judgment was entered in favor of plaintiff McKissack in the capacity in which he sued, and award was made to Hardware Mutual Casualty Company for the amount paid by it to McKissack, and the remainder was awarded to McKissack. From that judgment Commercial Standard Insurance Company has appealed.

For purposes of this opinion, further reference to the former litigation growing out of the accident becomes unnecessary, except when we shall have occasion to refer to some of the same parties in relation to the points to be discussed. We shall therefore refer to Commercial Standard Insurance Company as appellant and to H. T. McKissack as appellee.

Under the single assignment of error by appellant, it contends that the sole question for determination by this court is, whether or not its policy of insurance issued to Paul A. Cook covered the damages sustained by appellee when he collided with the International truck.

There is no controversy between the parties as to the facts involved; they are all stipulated in the record.

■ The law applicable to this case is to be found in Chapter 314 of the 41st Legislature, 1929, and subsequent amendments thereto, now embraced in Article 911b et seq., Vernon's Texas Annotated Statutes.

The application of Cook for a permit to operate as a Special Commodity Carrier contains the requisites prescribed by Art. 911b, sect. 6, and enumerates the commodities to be carried as being those named in subdivision "d" of said section. In compliance with subsection 3 of Section 6(b) of Article 911b, the application identified the vehicles intended to be used as three Ford trucks, giving the models and motor numbers of each. Prior to the issuance of the permit, the applicant paid the fees on the three Ford trucks, required by Section 7 of the Act. He also filed with the Railroad Commission the policy of insurance issued by appellant.

As before stated, the Special Commodity Carrier permit was issued on May 17, 1937. The permit recites compliance by the applicant with Chapter 314, above mentioned, and enumerates the commodities to be carried the same as contained in the applicaton and in subdivision "d" of Section 6 of the Act. In addition to these, the permit concludes with paragraph which reads: "All equipment to be operated under authority of this order is to be restricted exclusively to that owned by the holder of such permit and shall not exceed *three trucks.*"

The policy of insurance upon which the permit was issued contains an endorsement known as "No. 77", two paragraphs of which are as follows:

"It is understood that the policy to which this endorsement is attached is to be offered for filing by the above named Insured (Cook) with the Railroad Commission of Texas as a condition precedent to the privilege to operate as a Motor Carrier within the State of Texas under a certificate of Convenience and Necessity * * * in compliance with the provisions of Chapter 314 * * * and this endorsement is attached for the purpose of making the provisions of the policy conform with the requirements of the law."

"Coverage by the policy applies to all trucks and trailers belonging to or under the direction of the named Insured, whether particularly identified in the policy or not, while same are being used in the business of carrying property for hire or compensation and coming within the terms of the Statutes, above referred to, and it is agreed that, subject to the policy limits, this policy covers the liability imposed by law upon the named Insured for injury to or death of persons * * * through such operation of such trucks and trailers within the boundaries of the State of Texas, even though such trucks and trailers may not be specifically identified herein, any-

thing in the policy or endorsements thereto to the contrary notwithstanding * * *."

The appellant contends that because of the language used in the last quoted paragraph as to coverage by the policy, it cannot be held for payment of a judgment obtained by appellee growing out of a collision with the International truck then owned and being used by Cook in connection with his business as a Special Commodity Carrier under the permit issued by the Railroad Commission. It argues that the phrase in the coverage provision, "*And coming within the terms of the Statutes, above referred to*," should be construed to mean that the policy was to cover public liability and property damage occasioned by all *trucks and trailers* coming within the terms of the Statutes; that since the International truck did not come within the Statutes, and the collision was with that truck, there was no liability under the policy.

As we read the coverage provision of the policy, as quoted above, we do not so construe its meaning. To say the least of it, such a construction as contended for by appellant does not necessarily follow. It will be observed from the language used that there is coverage promised for "all trucks and trailers belonging to or under the direction of the named insured * * * while the same are being *used in the business of carrying property for hire or compensation* and coming within the terms of the Statutes." Here we find two subject matters, viz.: First, the compound subject of trucks and trailers, and second, the *business* of carrying property for hire, followed by the phrase, "and coming within the terms of the statutes." The question is, to which of these two subjects does the last quoted phrase refer? It is a well recognized rule of grammar and syntax that the explanatory phrase is applicable to the substantive subject nearest to it. When thus construed the language used means that coverage is given by the policy, if the *business of carrying property for hire* comes within the Statutes.

It is undisputed in the record that the insured's agent Walker was en route with the International truck to a point from which he expected to transport such commodities as were enumerated in the permit. Likewise it must follow that the insured was using the International truck "in the business of carrying property for hire or compensation" and it cannot be said such acts did not come within the terms of the Statute.

All parties to this suit admit that there are no adjudicated cases by the courts of this State wherein the point here raised has been decided. Both sides have cited cases from other jurisdictions, tending to support their respective contentions. But they are of little value to us, since they were decided upon interpretations of the statutory laws of the states in which the cases originated, and, having no access to such statutes, we cannot accurately apply the rules there announced to our statutes which may be entirely different.

■ We are fully convinced that the endorsement of coverage contained in the policy, which we have discussed above, is susceptible of the construction we have given it. It is a universally settled rule of law in this State that language used in an insurance policy which is susceptible of more than one construction should be interpreted strictly against the insurer and liberally in favor of the insured. 24 Tex. Jur. p. 704, sect. 28, and the many cases there cited.

■ This writer makes little pretensions at a knowledge of grammar and even if the whole coverage paragraph in the policy is not grammatically correct, it should not be given such a construction as would defeat its obvious purpose. It will be observed that the policy provides that it was issued to be filed with the Railroad Commission to enable that Board to issue a valid permit to the Insured. It also provides, in effect, that it covers *all* trucks and trailers belonging to the insured, whether identified in the policy or not. To our minds, this language indicates that appellant anticipated the conditions now before us, might arise. This is emphasized by the language used in the permit, wherein the permittee was limited to the use of vehicles owned by him, not to exceed three in number. If a contract is susceptible of more than one construction, one of which would render it void and another valid, it should receive that interpretation which would leave it valid.

The legislative act as a whole makes certain the fact that the Railroad Commission is designated as an arm of the State Government for the administration and enforcement of the provisions of the Act. The authority of the Commission in this respect is not questioned by appellant. In

administering the law, the Commission is required to do so in the interest of the public. Section 4(d). Likewise it must keep in mind the protection of the highways and the safety of the traveling public. Section 6(d). The policy of this particular law is declared to be for the proper regulation of the various kinds of motor carriers for hire along the highways of this State, and such businesses are considered of public interest. Section 22b.

There is also this additional reason for the views we have expressed: It is the *business* of hauling commodities named in the permit, which the insured was licensed to pursue, about which the State is most concerned, rather than the type, kind or number of vehicles he should use. We reach this conclusion for the reason there are provisions in the law for adding to or supplying other vehicles in lieu of those enumerated in the application. The insurance required by the Act is for the protection of the highways and the public, while the permittee pursues the business of a commodity carrier.

In compliance with Section 13 of the Act, the Railroad Commission required Cook to procure and file the policy of insurance here involved, as a condition precedent to the issuance of the permit. Appellant knew of this requirement and endorsed its policy to that effect. We do not believe its binding effect should be defeated by a technical grammatical construction of the coverage clause.

■ Appellant argues in support of its contention of non-liability that Cook was violating Article 1690b of the Penal Code of Texas, Vernon's Ann.P.C., when the accident happened. By that Article of the Penal Code it is made a misdemeanor for any person to violate any of the provisions of Article 911b et seq. The stipulated facts show that the application of Cook only identified three Ford trucks to be used in his business as a Commodity Carrier, and that he had been operating the International truck since one Ford truck became out of repair; that he had not had his permit modified or amended so as to allow him to use the International; that he had not paid the additional $10 fee on that truck, as provided in Sect. 7 of the Act, nor had he procured from the Commission identification plates and attached them on the front and rear of the International truck, as required by Sect. 18 of the Act.

We are not inclined to agree with the contention of non-liability on these grounds. The permit under which Cook was doing business as a Special Commodity Carrier states that the equipment to be operated under authority of the Commission's order is to be restricted exclusively to that owned by the holder of the permit and shall not exceed three trucks. The International truck was owned by Cook and he was using only three trucks in his business at the time of the accident.

■ It remains an undisputed fact that Cook was operating his business under and by virtue of the permit issued to him by the Commission. Until that permit was canceled by the Railroad Commission, the permittee remained a legally constituted and licensed Special Commodity Carrier; the permit was not void because perchance the permittee had infringed some misdemeanor statute of the state. The appellant obligated itself under the terms of the policy contract, and that obligation inured to the benefit of the public, including appellee. Neither appellee nor any other member of the public would be in a position to know whether the insured had in the past or was at the time operating his business strictly in accordance with the law; they had a right to assume that he was. If it could be said that insured had committed acts for which his permit could be canceled, so long as it remained unrevoked, appellant's liability continued. Trinity Universal Ins. Co. v. Cunningham, 8 Cir., 107 F.2d 857, construing the Missouri Statute.

■ Our attention has not been called to any provision in the policy which limits appellant's liability to the lawful acts of the insured. If appellant could only be held liable under its policy for damages arising from the acts of the insured which were lawful, right and proper, we perceive that there would be little or no advantage to the public in requiring a permittee to furnish indemnity against damages thus incurred. The purpose of the law is to guarantee payment of judgments obtained against the carrier. The presumption prevails that no judgment will be obtained against him except for his wrongful acts, while conducting his business as a carrier.

We see no error in the record before us. We believe that we have given such interpretation to the language of the insurance contract that a sound public policy demands. We therefore overrule the assignment of error and the propositions thereunder and affirm the judgment of the trial court. It is accordingly so ordered.