NATIONAL CASUALTY COMPANY,
Appellant,

v.

LANE EXPRESS, INC., n/k/a Longhorn
Aggregate Haulers, Inc., James Moon,
and Harold Chester, Jr., Appellees.

No. 05–96–00444–CV.

Court of Appeals of Texas,
Dallas.

April 16, 1999.

Samuel L. Boyd, Priscilla E. Perry, Boyd & Associates, Dallas, for Appellant.

D. Patrick Long, Patton & Boggs, L.L.P., Dallas, for Appellees.

Before Justices OVARD, WHITTINGTON, and WRIGHT.

## O P I N I O N

JOHN OVARD, Justice.

National Casualty Company (National) appeals from a summary judgment granted for appellees. In three points of error, with multiple subpoints, National generally contends the trial court erred in (1) failing to grant National's motion for summary

judgment, (2) granting summary judgment for appellees because material issues of fact exist, and (3) granting summary judgment for appellees because their summary judgment evidence was "incompetent, manipulated or perjured." We reverse the trial court's judgment as to Lane Express, Inc. (Lane) and render judgment that National is entitled to reimbursement from Lane. We remand this cause to the trial court solely for consideration of National's claim for attorney's fees and prejudgment interest. In all other respects, we affirm the trial court's judgment.

## FACTS

James Moon leased one of his trucks to Lane. Moon also hired Harold Chester, Jr. to drive the truck for Lane. Chester drove the truck while intoxicated and caused a serious traffic accident. As a result of the accident, Richard Bourland and Margaret Jenkins were killed, and Patrick Jenkins was injured. Survivors and representatives of the Bourland and Jenkins families (collectively "Jenkins") filed suit against Lane and Chester.

Lane scheduled the leased truck on two liability insurance policies which provided primary coverage: a Landmark America Insurance Company (Landmark) policy for $100,000 and a National County Mutual Fire Insurance Company (NCM) policy for $500,000. In addition, Lane insured the truck with an excess carrier, Acceptance Insurance Company (Acceptance), for coverage in excess of the available primary coverage. Lane also maintained a liability policy with National, but Lane did not list the truck on the National policy or make any premium payments to National to insure the truck. Lane, however, did register the truck with the State under its motor carrier permit.

To obtain a motor carrier permit to operate in the state of Texas, Lane was required to maintain liability coverage on all its trucks and file proof of coverage, at a minimum of $500,000, with the Texas Railroad Commission (TRC). Lane used its policy with National to satisfy the TRC certification requirement. As required by law, the National policy was amended by an endorsement (Form F) to provide "insurance for automobile bodily injury and property damage liability in accordance with the provisions of ... [Texas] law or regulations to the extent of the coverage and limits of liability required thereby[.]" The endorsement further provides that the insured shall reimburse the insurer for any payment the insurer makes which it would not have been obligated to make except as required by TRC regulations.

Demand was made on each of Lane's insurers to participate in settling the Jenkins claim. Landmark and NCM, however, ultimately did not participate. Landmark claimed that its policy had been canceled, and NCM was placed into receivership. When Lane's insurance coverage with its primary insurers failed, the Form F endorsement of the National policy obligated National to provide coverage up to $500,000 even though the truck was never scheduled on its insurance policy.

The Jenkins lawsuit settled for $650,000, and an agreed judgment was entered dismissing the case with prejudice. The parties' settlement agreement provided that Scottsdale Insurance Company (Scottsdale), National's sister company, would pay $500,000 and Acceptance, Lane's excess carrier, would pay the remaining $150,000. The settlement agreement also contains the following language:

> [a]ll parties ... to this Compromise Settlement Agreement and Release of All Claims do mutually release all other parties, individually and in any and all representative capacities, from all claims and causes of action owned by the parties now or which claims and causes of action may accrue in the future.

The settlement agreement is signed by the attorneys for Jenkins and the attorneys for Chester and Lane. Neither Scottsdale nor National signed the settlement agreement. National, however, paid $500,000 to

Jenkins, and Acceptance paid the remainder.

Pursuant to Form F, National sought reimbursement from Lane, Chester, and Moon for recovery of its $500,000 payment. National claimed it made the payment solely pursuant to TRC regulations and is entitled to reimbursement under Form F of its policy. Appellees argued that National released its claims for reimbursement in the settlement agreement. In the alternative, appellees argued that in order to be entitled to reimbursement under Form F, the payment must have been made pursuant to a final judgment, not a voluntary settlement agreement.

National filed a motion for summary judgment against Lane and Chester based on deemed admissions. Lane and Chester sought relief from the deemed admissions and filed cross-motions for summary judgment. Moon also filed a motion for summary judgment, and National filed a cross-motion for summary judgment. Following the filing of various supplements, amendments, and responses to the pending motions for summary judgment, the trial court heard the summary judgment motions and granted summary judgment for appellees. Although the trial court sent the parties a letter explaining the rationale for its ruling, the summary judgment itself states no specific grounds for the decision. This appeal followed.

## STANDARD OF REVIEW

The standards for reviewing a summary judgment are well established: (1) the movant for summary judgment has the burden of showing there is no genuine issue of material fact and it is entitled to summary judgment as a matter of law; (2) in deciding whether there is a disputed fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). A de-

fendant who moves for summary judgment must show that the plaintiff has no cause of action. A defendant may meet this burden by either (1) disproving at least one essential element of each theory of recovery, or (2) conclusively proving all elements of an affirmative defense. *Wornick Co. v. Casas,* 856 S.W.2d 732, 733 (Tex.1993); *Black v. Victoria Lloyds Ins. Co.,* 797 S.W.2d 20, 27 (Tex.1990).

When, as in this case, both sides file motions for summary judgment and one is granted and one is denied, we review all questions presented. *Nationwide Property & Cas. Ins. Co. v. McFarland,* 887 S.W.2d 487, 490 (Tex.App.—Dallas 1994, writ denied). We review the summary judgment *de novo* to determine whether a party's right to prevail is established as a matter of law. *Howard v. INA County Mut. Ins. Co.,* 933 S.W.2d 212, 216 (Tex. App.—Dallas 1996, writ denied).

When a summary judgment order does not specify the grounds upon which the motion was granted, the reviewing court will affirm the judgment if any one of the theories advanced in the motion is meritorious. *State Farm Fire & Cas. Co. v. S.S.,* 858 S.W.2d 374, 380 (Tex.1993). A letter cannot be considered on appeal as providing the reasons for the judgment. *RRR Farms, Ltd. v. American Horse Protection Ass'n,* 957 S.W.2d 121, 126 (Tex.App.— Houston [14th Dist.] 1997, writ denied). Thus, because the summary judgment here does not state the grounds relied upon in the judgment itself, we will affirm the judgment if any of the theories advanced by appellees in their motions are meritorious.

## WITHDRAWAL OF DEEMED ADMISSIONS

In points of error 1(a), 2(a), and 2(b), National complains the trial court erred in failing to grant summary judgment for National and in granting summary judgment for appellees because the trial court erroneously allowed the withdrawal of deemed admissions and failed to consider

them as summary judgment evidence. In its brief, National appears to challenge two separate instances regarding the withdrawal of deemed admissions: (1) the trial court's June 8, 1995 ruling allowing Lane and Chester to withdraw the deemed admissions, and (2) the trial court's "implied" decision to allow Lane and Chester to submit answers to the request for admissions after the June 15, 1995 deadline. We will discuss both instances.

## Applicable Law

▬▬▬ A trial court has broad discretion to permit or deny the withdrawal of deemed admissions. *Employers Ins. of Wausau v. Halton*, 792 S.W.2d 462, 464 (Tex.App.—Dallas 1990, writ denied). We set aside the trial court's ruling only if, after reviewing the entire record, it is clear that the trial court abused its discretion. *Burden v. John Watson Landscape Illumination, Inc.*, 896 S.W.2d 253, 255 (Tex.App.—Eastland 1995, writ denied). An abuse of discretion occurs when a court acts without reference to guiding rules or principles, or acts arbitrarily or unreasonably. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

▬▬ Rule 169(2)[1] of the Texas Rules of Civil Procedure provides that a court may permit the withdrawal or amendment of deemed admissions upon a showing of good cause if the court finds that the parties relying upon deemed admissions will not be unduly prejudiced and that the presentation of the merits of the action will be subserved by the withdrawal or amendment of the responses. TEX.R. CIV. P. 169(2) (former rule). A party can estab-

lish "good cause" by demonstrating that the failure to respond is accidental or the result of a mistake, rather than intentional or the result of conscious indifference. *Stelly v. Papania*, 927 S.W.2d 620, 622 (Tex.1996).

▬▬▬ The discovery rules were not designed as a trap for the unwary, nor should they be used to prevent a party from presenting the truth. *Burden*, 896 S.W.2d at 256. Rule 169 should not be construed to provide one party with an advantage over his opponent. *Halton*, 792 S.W.2d at 464. Rather, the rules of civil procedure are designed to allow parties to obtain a just, fair, equitable, and impartial adjudication of their rights. *See* TEX.R. CIV. P. 1; *Burden*, 896 S.W.2d at 256.

## Discussion

National contends that twice Lane and Chester failed to respond to its request for admissions.[2] National first sent Lane and Chester its request for admissions on October 4, 1993, by mail, thus requiring an answer no later than November 8, 1993.[3] The request for admissions generally asked Lane and Chester to admit that the Form F endorsement amended National's policy to provide coverage, National paid Jenkins $500,000 pursuant to a judgment because of the amendment to the policy, and Form F requires Lane and Chester to reimburse National for its payment to Jenkins. No responses were served or filed; therefore, the admissions automatically were deemed admitted on November 9, 1993. After failing to timely respond to National's request for admissions, Lane and Chester filed a motion on December 14, 1993 to withdraw the deemed admis-

---

**1.** Effective January 1, 1999, rule 169 was repealed and replaced by rule 198. *See* TEX.R. CIV. P. 198. Because rule 169 was in effect at the time this matter was before the trial court, we refer to the former rule.

**2.** Although National also sent a request for admissions to Moon, on appeal National does not challenge Moon's answers in any regard.

**3.** Pursuant to former rule 169(2), Lane and Chester had thirty days to respond, plus three additional days because the requests were served by mail. *See* TEX.R. CIV. P. 169(1) (former rule); *see also* TEX.R. CIV. P. 21a. Because the thirty-third day fell on a Saturday (November 6, 1993), the responses were due the following Monday, November 8, 1993. *See* TEX.R. CIV. P. 4.

sions. Both parties continued to file numerous amendments and responses to the request for admissions during the next year and a half. Essentially, Lane and Chester, who were not represented by counsel at the time they were served with the request for admissions, argued that because they did not understand the nature and consequence of their answers, the deemed admissions should be withdrawn and they should be permitted to submit amended answers.

On June 8, 1995, the trial court granted Lane and Chester's motion and withdrew the deemed admissions. The order stated that Lane and Chester were to provide answers to the request no later than June 15, 1995. Counsel for Lane and Chester, however, allege they did not receive the trial court's order until June 14, 1995 because counsel was out of town. As a result, Lane and Chester did not file their answers until June 19, 1995, four days after the trial court's deadline. Along with their answers, Lane and Chester also filed a motion for leave to file late responses. Additionally, on July 7, 1995, Lane and Chester filed a motion to withdraw the admissions if the trial court determined that the requests were deemed admitted.

■ We first address National's complaint that the trial court abused its discretion on June 8, 1995 by permitting Lane and Chester to withdraw the deemed admissions. Lane and Chester stated that they were not yet represented by counsel and argued that they were untrained and inexperienced in legal matters and therefore failed to appreciate the significance of responding to the request for admissions by the appropriate deadline. In particular, neither party could recognize the significance of replying to questions, for example, concerning statutory payment obligations. Further, Lane and Chester argued that the deeming of these admissions would effectively deprive them of the opportunity to present the merits of their defense. *See Boone v. Texas Employers' Ins. Ass'n,* 790 S.W.2d 683, 688 (Tex.App.—Tyler 1990, no writ). Thus, we determine that Lane and Chester showed good cause for failing to timely answer. *See Halton,* 792 S.W.2d at 465–67. Accordingly, we conclude that the trial court did not abuse its discretion in permitting Lane and Chester to withdraw their admissions on June 8, 1995.

■ Next, we address the significance of Lane and Chester's June 19, 1995 answers. National alleges that to the extent the trial court did not err in permitting Lane and Chester to withdraw their admissions on June 8, 1995, Lane and Chester's failure to submit answers by the June 15, 1995 deadline and failure to show good cause for the untimely filing of their answers resulted in the requests automatically being deemed admitted. We disagree.

■ Initially, we note that the record does not contain any written order granting either Lane and Chester's June 19, 1995 motion for leave to file late answers or Lane and Chester's July 7, 1995 motion to withdraw deemed admissions. On September 18, 1995, the trial court held a hearing regarding National's challenge to the authority of counsel for appellees to submit responses on appellees' behalf. At the conclusion of the hearing, the trial court orally granted Lane and Chester's motion for leave to file responses to National's request for admissions. The trial court also stated that it would "formulate an opinion on [the request for admissions issue] in connection with [the trial court's] ruling on the motion for summary judgment." On February 8, 1996, the trial court issued an order granting appellees' motions for summary judgment. The order also stated "[the trial court] has declined to rule upon various objections to [appellees'] summary judgment evidence because it has concluded that [appellees] are entitled to summary judgment based upon uncontroverted facts otherwise evident from the record." Viewing the trial court's ruling granting appellees' motion for summary judgment together with the

request for admissions, we conclude that the trial court implicitly granted Lane and Chester's June 19, 1995 motion for leave to file late answers. Thus, the requests were not deemed admitted.

Having determined that the trial court withdrew the deemed admissions a second time and permitted Lane and Chester to submit untimely answers, we further conclude that the affidavit of Lane and Chester's counsel explaining the late receipt of the trial court's June 8, 1995 order demonstrates good cause. *See Halton,* 792 S.W.2d at 466 (noting that even a slight excuse can suffice to establish good cause); *see also Gotcher v. Barnett,* 757 S.W.2d 398, 401 (Tex.App.—Houston [14th Dist.] 1988, no writ) (interpreting good cause requirement under rule 320 of Texas Rules of Civil Procedure). Further, National was not prejudiced by the submission of Lane and Chester's answers four days after the trial court's deadline. *See Halton,* 792 S.W.2d at 466–67. Accordingly, the trial court did not abuse its discretion in permitting Lane and Chester to respond to the request for admissions. We overrule National's points of error 1(a), 2(a), and 2(b) challenging the withdrawal of the deemed admissions.

## FORM F REIMBURSEMENT

In the remaining subparts of points of error 1 and 2, National contends that under Form F of its policy with Lane, it is entitled to reimbursement from appellees of its $500,000 payment to Jenkins. Appellees contend that any right of reimbursement was waived by the mutual release provisions of the Jenkins settlement agreement, or, alternatively, Lane and Chester are not subject to the reimbursement provisions of Form F and the payment does not fall within Form F because it was not made pursuant to a contested judgment.

### The Settlement Agreement

We first address whether National released its reimbursement claim in the Jen-

kins settlement agreement. The law of contracts is applicable to settlement agreements. *Stewart v. Mathes,* 528 S.W.2d 116, 118 (Tex.Civ.App.—Beaumont 1975, no writ). Mutual assent is a fundamental essential of every contract. *See Monroe v. Gaylor,* 268 S.W. 724, 726 (Tex. Comm'n App.1925, judgm't adopted). Additionally, a settlement agreement reached during pending litigation must comply with rule 11 of the Texas Rules of Civil Procedure to be enforceable. *Padilla v. LaFrance,* 907 S.W.2d 454, 460 (Tex.1995). Rule 11 requires that settlement agreements be in writing, signed by the parties to the agreement, and filed in the record. TEX.R. CIV. P. 11; *Padilla,* 907 S.W.2d at 460–61.

The Jenkins lawsuit was settled for $650,000. The settlement agreement included language that Scottsdale would pay Jenkins $500,000 and that all parties mutually released one another. The agreement is signed by an attorney representing Jenkins and an attorney representing Lane and Chester. The settlement agreement, however, does not contain the signature of any representative from either Scottsdale or National. Neither Scottsdale nor National was a party to the suit, and there is no evidence that any of the attorneys who signed the settlement agreement were authorized to bind Scottsdale or National to the agreement. Nor do appellees direct us to any evidence in the record that Scottsdale or National agreed to be bound by the Jenkins settlement, other than the fact National made the $500,000 payment called for in the settlement agreement. National's payment, however, is consistent with its obligations under Form F and, therefore, is not evidence that it agreed to be bound by the settlement agreement. Because National did not sign the settlement agreement or agree to be bound by it, National is a stranger to the settlement contract and, therefore, cannot be bound by the release provisions. *See Beaumont v. Excavators & Constrs.,* 870 S.W.2d 123, 129 (Tex.App.—Beaumont 1993, writ denied) ("a contract between other parties

cannot create an obligation or duty on a non-contracting party").

## Form E Certification and Form F Endorsement

■ Texas law requires that each motor carrier operating in Texas obtain liability insurance in at least the minimum amount prescribed by administrative regulation. *See* TEX.REV.CIV. STAT. ANN. art. 911b, § 13 (Vernon 1964).[4] The law further requires that the liability policy provide coverage up to the face amount of the policy to satisfy all judgments which may be recovered against the motor carrier arising out of the actual operation of the motor carrier. *Id.* Motor carriers in Texas may satisfy this requirement by obtaining a "Form F'" endorsement to the carrier's liability insurance policy. In relevant part, Form F provides:

> The certification of the policy ... under the provisions of any State motor carrier law or regulations promulgated by any State commission ... amends the policy to provide insurance for automobile bodily injury and property damage liability in accordance with the provisions of such law or regulation to the extent of the coverage and limits of liability required thereby ... provided only that the insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the policy except by rea-

son of the obligation assumed in making such certification.

A motor carrier must certify compliance with these insurance requirements by filing "Form E" with the regulating agency, identifying its Form F insurer. The purpose of these requirements is to ensure that liability insurance is always available for the protection of motorists injured by commercial motor carriers. *See Commercial Standard Ins. Co. v. McKissack,* 153 S.W.2d 997, 1000–01 (Tex.Civ.App.—Fort Worth 1941, writ ref'd). Forms E and F therefore have the effect of making the Form F insurer an insurer of last resort when no insurance would otherwise be available. This may occur, for example, when a motor carrier fails to pay the required premium for insuring a vehicle or another carrier covering the vehicle refuses or is unable to honor a claim. However, in the event that the Form F insurer becomes obligated to pay a claim it would not otherwise have paid but for the Form F endorsement, the endorsement further allows the insurer to obtain reimbursement from the insured.

National contends that when Lane's primary insurers failed to provide coverage for the Jenkins claim, National became the insurer of last resort and was obligated to pay the claim under Form F. National contends it is therefore entitled to reimbursement from any insured. National further argues that Lane, Moon, and Ches-

4. Article 911b was repealed in 1995, and section 13 was recodified at article 6675c of the Texas Revised Civil Statutes. *See* Act of June 15, 1995, 74th Leg., R.S., ch. 705, § 31(a)(4), 1995 Tex. Gen. Laws 3740. The provision was recodified again in 1997 as part of the Texas Transportation Code, and regulatory authority was transferred from the Texas Railroad Commission to the Department of Transportation. *See* Act of May 21, 1997, 75th Leg., R.S., ch. 165, § 30.150(a), (b), 1997 Tex. Gen. Laws 659, 662–63, 669 (current version at TEX. TRANSP. CODE ANN. § 643.101 (Vernon Pamph.1999)).

Former article 911, section 13 was the law in effect at the time this action was commenced. In pertinent part, former article 911b, section 13 provides:

> Before any permit or certificate of public convenience and necessity may be issued to any motor carrier and before any motor carrier may lawfully operate under such permit or certificate as the case may be, such motor carrier shall file with the Commission bonds and/or insurance polices ... in an amount to be fixed by the Commission under such rules and regulations as it may prescribe, which bonds and insurance policies shall provide that the obligor therein will pay to the extent of the face amount of such insurance policies and bonds all judgments which may be recovered against the motor carrier ... based on claims for loss or damages from personal injury ... arising out of the actual operation of such motor carrier[.]

ter are each "insureds" as contemplated by Form F. National points to the definition of "PERSONS INSURED" in the body of the policy and contends Chester and Moon fall within definitions (c) and (d), respectively.[5]

■ Assuming without deciding that Chester and Moon fall within the definition of "PERSONS INSURED" in the main body of the policy, we nevertheless conclude that "the insured" referred to in Form F refers only to the named insured, not others which may be included under "PERSONS INSURED" in other parts of the policy. First, we note that National misquotes Form F when it states it is entitled to reimbursement from "any insured." Form F provides for reimbursement from "the insured." The policy identifies Lane as the named insured, and only Lane's signature appears on the insurance policy as well as the endorsement. It is a fair reading of Form F that only the named insured is subject to the reimbursement provision.

■ More fundamentally, however, even if Moon and Chester are "insureds" under the contract, that does not mean they are "parties" to the contract. Mutual assent is a fundamental essential of every contract. *See Monroe*, 268 S.W. at 726. Neither Moon nor Chester agreed to be bound by the terms of Lane's insurance contract with National. While Lane may have bargained for coverage of additional "insureds," there is no summary judgment evidence that Lane had any authority to bind Moon or Chester to the contract of insurance. National's argument would im-

pose upon Moon and Chester the obligations under Form F despite the fact that neither participated in the formation of the insurance contract. *See Progressive County Mut. Ins. Co. v. Carway*, 951 S.W.2d 108, 112–13 (Tex.App.—Houston [14th Dist.] 1997, writ denied). Moon and Chester cannot be bound by a contract they did not agree to. Accordingly, we overrule National's points of error one and two with regard to Moon and Chester. *See Beaumont*, 870 S.W.2d at 129.

■ We reach a different conclusion as to Lane, however. Form F is clearly applicable to Lane, the named insured. While appellees do not dispute that Lane is "the insured" subject to Form F, appellees nevertheless contend that reimbursement is unavailable in this case because National paid pursuant to a settlement agreement rather than a final judgment. Appellees argue that the phrase "all judgments," as used in former article 911b, section 13, includes only a judgment on the merits entered after an adversarial proceeding and therefore does not apply to an agreed judgment rendered after settlement. Appellees further contend Form F must be read as limited by former article 911b, section 13, and therefore only applies to contested judgments. We disagree.

First, Form F itself does not use the term "judgment." Rather, Form F provides that "the insured agrees to reimburse the company for *any payment* made by the company which it would not have been obligated to make under the terms of this policy except by reason of the obligation assumed in making . . . [the Form

---

**5.** In relevant part, the policy provides:
PERSONS INSURED: Each of the following is an insured under this insurance to the extent set forth below:
(a) the named insured;
* * *
(c) any other person while using an owned automobile or a temporary substitute automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permis-

sion, but with respect to bodily injury or property damage arising out of the loading or unloading thereof, such other person shall be an insured only if he is:
(1) a lessee or borrower of the automobile, or
(2) an employee of the named insured or of such lessee or borrower;
(d) any other person or organization but only with respect to his or its liability because of acts or omission of an insured under (a), (b) or (c) above.

E] certification." (Emphasis added.) Thus, by its terms Form F is broader than former article 911b. Form F is not limited to a payment made pursuant to a judgment, be it agreed or otherwise, but covers any payment made by the insurer that it otherwise would not have been obligated to make. We see no reason to read Form F as limited by the statutory language used in former article 911b. We note that Form F is a uniform endorsement intended to comply with multiple state laws as well as the federal Interstate Commerce Act.[6] Therefore, it is not surprising that the form does not restrict itself to the statutory language used in Texas. The term "any payment" would necessarily encompass a payment made pursuant to a judgment, thereby allowing the form to comply with Texas law. Appellees have cited no authority that the form cannot be broader than the minimum required by Texas law. Absent authority to the contrary, we decline to ignore the plain language of the form.

 ▪ Secondly, even if the right to reimbursement under Form F is limited by former article 911b to the payment of judgments, on its face article 911b is not restricted to a judgment on the merits entered after an adversarial trial. Agreed judgments normally have the same force and effect as those secured after adversarial trials. *See, e.g., Pollard v. Steffens,* 161 Tex. 594, 602, 343 S.W.2d 234, 239 (1961); *Birdwell v. Birdwell,* 819 S.W.2d 223, 226 (Tex.App.—Fort Worth 1991, writ denied); *O'Connor v. O'Connor,* 694 S.W.2d 152, 155 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.). National paid a claim which was liquidated pursuant to the Jenkins settlement agreement and final judgment. We hold this payment is sufficient to trigger the reimbursement provisions of Form F.

In so holding, we conclude appellees' reliance on *Beech Aircraft v. Jinkins,* 739 S.W.2d 19 (Tex.1987), and *Stewart v. Mathes,* 528 S.W.2d 116 (Tex.Civ.App.—Beaumont 1975, no writ), is misplaced. We find these cases distinguishable.

In *Beech Aircraft,* the issue before the Texas Supreme Court was "whether a defendant, who settles a plaintiff's entire claim, may preserve a right to contribution from an alleged joint tortfeasor who does not participate in the settlement." 739 S.W.2d at 19. In the present case, National seeks reimbursement under a completely different legislative scheme than was present in *Beech Aircraft.* Lane also stands in a much different position than did the plaintiff in *Beech Aircraft.* Lane and National are not joint tortfeasors. National did not participate in a settlement without Lane, and National did not settle the plaintiff's entire claim. Instead, Lane and its joint tortfeasor, Chester, settled their own liability, forcing National to perform its obligations under Form F. By calling on National to pay the first $500,000 of the settlement after Lane's primary insurers failed to pay, Lane's excess coverage became available to settle Lane's and Chester's remaining liability. The remaining liability was compromised for $150,000, bringing the total settlement to $650,000. Lane was aware, however, as National had asserted for at least nine months prior to the settlement, that National would seek reimbursement if called on to make a payment under Form F. National's claim for reimbursement therefore bears little resemblance to the claim for contribution in *Beech Aircraft.* National did not purchase the plaintiff's claim, nor did it stand in the "unusual posture as surrogate plaintiff, codefendant and cross-plaintiff." *See Beech Aircraft,* 739 S.W.2d at 22.

6. The full title of Form F is: "77A. Uniform Motor Carrier Bodily Injury and Property Damage Liability Insurance Endorsement." The Form contains the following sentence after the signature lines: "This form determined by the National Association of Regulatory Utility Commissioners and promulgated by the Interstate Commerce Commission pursuant to the provisions of Section 202(b)(2) of the Interstate Commerce Act (49 U.S.C., sec. 302(b)(2))."

Likewise, *Stewart* bears little resemblance to the present case. In that case, the court held that a party to a settlement agreement could not withdraw her consent prior to entry of a judgment based on the settlement agreement. *Stewart,* 528 S.W.2d at 118–19. Nothing in *Stewart* bears on National's claim for reimbursement under Form F.

### CONCLUSION

We conclude that National may obtain reimbursement from Lane as provided by Form F. We therefore sustain National's first and second points of error to the extent National complains the trial court erred in failing to render summary judgment in favor of National and against Lane for reimbursement under Form F. Otherwise, National's first and second points of error are overruled. Because it is not necessary for the disposition of the appeal, we need not address National's remaining point of error. *See* Tex.R.App. P. 47.1.

We reverse the trial court's judgment as to Lane and render judgment that National recover $500,000 from Lane. We remand this cause to the trial court for consideration of National's claims for attorney's fees and determination of prejudgment interest. We affirm all other aspects of the trial court's judgment.